AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19- mj-le |
| THE PREMISES LOCATED AT 7200 CYPRESS LAKES APT. BLVD., APARTMENT 725 BATON ROUGE, LOUISIANA 70809 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute and distribution of cocaine and heroin. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason A. Dohm, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____01/07/2019_____

_____
*Judge's signature*

City and state: Baton Rouge, Louisiana

Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | : | |
| OF THE UNITED STATES OF AMERICA | : | CASE NO. 19-mj-6 |
| FOR A WARRANT AUTHORIZING THE | : | |
| SEARCH OF THE PREMISES LOCATED | : | **UNDER SEAL** |
| AT 6157 ANTIOCH BLVD, BATON ROUGE, | : | |
| LOUISIANA 70817 and 7200 CYPRESS | : | |
| LAKES APT. BLVD., APARTMENT 725, | : | |
| BATON ROUGE, LOUISIANA, 70809 | : | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

Your affiant, Jason A. Dohm, a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), being duly sworn, deposes and states as follows:

## I.    INTRODUCTION

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and Title 21, United States Code, Section 879, for a warrant to search the premises known as **6157 Antioch Blvd, Baton Rouge, Louisiana 70817** and **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, Louisiana 70809**, further described in Attachment A, for the things described in the following paragraphs and in Attachment B.

## II.    AGENT BACKGROUND

2.    I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.      I am a narcotics detective with the Baton Rouge City Police Department, employed since April 19, 2004, and have been assigned to the narcotics division since December 2009. I was previously assigned to the DEA, Baton Rouge District Office ("BRDO"), from February 26, 2012, to March 2015. From March 2015, to March 2016, I was transferred back to the narcotics division where I continued investigating narcotics trafficking cases in the Baton Rouge area. I have currently been assigned to the DEA since March of 2016. Since being assigned to the DEA as a TFO, I have conducted numerous investigations of unlawful drug distribution in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and conducted or participated in electronic and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of cooperating sources and reviews of taped conversations and drug records. Through my training, education, and experience, I became familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. I have conducted and participated in investigations involving interception of wire and electronic communication devices, and I am familiar with the ways in which drug traffickers conduct their business including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones and of digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

4.      In addition, I have conducted, in connection with these and other cases, follow up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

5.    I have conducted and participated in investigations involving interception of wire and electronic communication devices, and I am familiar with the ways in which drug traffickers conduct their business, including but not limited to, their methods of importing and distributing drugs, their use of cellular telephones, to include text message and their use of numerical codes and code words to conduct their transactions.  Also, during these investigations, I have authored federal affidavits requesting approval for the interception of wire communications and federal affidavits in support of an application for a search warrant.  Also during these investigations, I have reviewed and interpreted thousands of conversations and text messages related to the distribution of cocaine and other controlled substances.

6.    Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances.  It is also common for large-scale narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or business for their ready access and control and to conceal them from law enforcement.  Narcotics traffickers in large-scale trafficking organizations also conceal, in their residences and/or place of business, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities.

7.    Your affiant knows, through training and experience, that locations used by drug traffickers to store cocaine and heroin, distribute cocaine and heroin, accept delivery of cocaine and heroin, and package cocaine and heroin for distribution, often times contain tools used for

these purposes and contain evidence of narcotics trafficking. These items include, but are not limited to, cocaine, heroin, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, firearms, U.S. currency, and ledgers or logs containing records of past, present, or future drug transactions.

8.      Your affiant knows, through training and experience, narcotics traffickers often keep money derived from the sale of controlled substances in their residence, business or the residence of a trusted family member. Furthermore, your affiant knows, through training and experience, that locations used by narcotics traffickers to count, store, and package money derived from the sale of controlled substances often contain tools used for this purpose. These tools include, but are not limited to, U.S. currency, rubber bands, money counters, plastic wrap, digital calculators and written ledgers documenting dates and amounts of currency transferred and to whom the transfer occurred.

## III.    **PURPOSE OF AFFIDAVIT**

9.      Your affiant is currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation involving agents and officers of the DEA, Internal Revenue Service ("IRS"), the Baton Rouge City Police Department ("BRPD"), Iberville Parish Sheriff's Office ("IPSO"), East Baton Rouge Parish Sheriff's Office ("EBRSO"), West Baton Rouge Parish Sheriff's Office ("WBRSO"), and Ascension Parish Sheriff's Office ("APSO"). This investigation is targeting the cocaine and heroin trafficking activities of the **PALMA Drug Trafficking Organization ("PALMA DTO")**.

10.     I make this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information from the following sources, which I believe to be reliable:

4

a.  Oral and written reports and documents about this and other investigations which I have received from members of DEA and telecommunications companies;

b.  Physical surveillance conducted by DEA and other law enforcement agencies;

c.  Controlled undercover purchases of cocaine and heroin;

d.  Public records;

e.  Review of pen register/trap and trace information, telephone toll records and subscriber information for telecommunications and residential utility service;

f.  Reports of consensually monitored and recorded telephone conversations;

g.  Interviews of confidential sources; and

h.  Conclusions based on my and other DEA agents who have been qualified as expert witnesses in narcotic trafficking cases, interpretations of conversations and text messages intercepted pursuant to a court authorized interception of wire and electronic communications.

11.    This affidavit is offered in support of a search warrant for **6157 Antioch Blvd, Baton Rouge, Louisiana 70817** and **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, Louisiana, 70809**.

12.    Because this affidavit is being submitted for the limited purpose of seeking authorization for the issuance of a search warrant, your affiant has not included each and every fact learned during the course of this investigation.  Facts not set forth herein are not being relied upon in reaching the conclusion that a search warrant should be issued.

13.    Furthermore, as set forth below, there is also probable cause to believe that **ANTUNEZ** is utilizing **6157 Antioch Blvd, Baton Rouge, LA** and **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**, to facilitate his cocaine and heroin trafficking operation.

14.     Described below are details of the investigation including some of the pertinent telephone calls and text messages intercepted over the **TARGET TELEPHONES**. In some instances, the entire conversation has been included and in others only the pertinent parts of the conversation are detailed. However, if only the pertinent parts of the conversation are detailed, your affiant has listened and analyzed the entire telephone call and/or text message.

15.     Your affiant has included his interpretation, contained within the parentheses, of code words or the meaning of the conversation. Your affiant based his interpretations of the conversations and code words based on prior intercepts, prior investigation and facts available at the time of the writing of this affidavit. In some instances, the conversations take place in Spanish and have been translated into English by a certified linguist. In these instances, your affiant has included his interpretation based on the information of the conversations translated by the certified linguist. Your affiant believes the interpretations are as accurate as possible based on the data available.

## IV.    <u>PROBABLE CAUSE</u>

16.     Since September 2017, agents of the DEA BRDO have been conducting an investigation of the cocaine and heroin and trafficking of **ANTUNEZ, PALMA** and other members of the **PALMA DTO**.

17.     During the course of the investigation, agents conducted controlled purchases of quantities of cocaine and heroin from **ANTUNEZ** with a confidential source.

18.     On July 31, 2018, agents met with the CS and formulated plans for the CS, while acting in an undercover capacity, to purchase two ounces of cocaine and one ounce of heroin from **ANTUNEZ** for $4,200.00.

19.    On the same date, the CS and **ANTUNEZ** held several consensually monitored and recorded telephone conversations. During these conversations, **ANTUNEZ** and the CS agreed to conduct a narcotics transaction for two ounces of cocaine and one ounce of heroin.

20.    At approximately 1:17 p.m., agents observed **ANTUNEZ** arrive at **6157 Antioch Blvd., Baton Rouge, LA**, driving his green Toyota Tundra, bearing Louisiana license C405090. A records check revealed the Toyota Tundra is registered to **Richard ANTUNEZ** at **6157 Antioch Blvd., Baton Rouge, LA**. Agents subsequently observed **ANTUNEZ** enter **6157 Antioch Blvd., Baton Rouge, LA.**

21.    At approximately 1:26 p.m., agents searched the CS and the CS' vehicle for weapons, drugs or money and reached negative results.

22.    At approximately 1:36 p.m., the CS received, an incoming telephone call from **ANTUNEZ**. During this consensually monitored and recorded telephone call the CS and **ANTUNEZ** agreed to meet at HH Gregg at the Mall of Louisiana to conduct the narcotics transaction.

23.    At approximately 1:38 p.m., the CS was equipped with a digital audio/video recording device and an audio transmitter and proceeded to the meeting location.

24.    At approximately 1:47 p.m., agents observed **ANTUNEZ** exit **6157 Antioch Blvd., Baton Rouge, LA**, carrying a plastic bag. Agents further observed a white BMW, bearing Louisiana license 920 AHG, arrive at **6157 Antioch Blvd., Baton Rouge, LA**, and pull into the driveway. A records check revealed the BMW is registered to **Richard ANTUNEZ** and **Laura GLAUDE.**

25.    At that time, agents observed **GLAUDE**, exit the driver's door and enter the front passenger door of the BMW. **ANTUNEZ** then entered into the driver's seat of one of the BMW

and departed **6157 Antioch Blvd., Baton Rouge, LA**.

26. At that time, agents conducted continuous surveillance on **ANTUNEZ, GLAUDE**, and the BMW and observed the vehicle travel directly to meet the CS. According to the CS, he/she entered the BMW and at that time **ANTUNEZ** handed him/her a plastic bag containing cocaine and heroin. In return the CS gave **ANTUNEZ** $4,200.00.

27. Subsequent to the CS conducting the controlled purchase of narcotics from **ANTUNEZ**, agents met with the CS. At that time, the CS surrendered a quantity of heroin and cocaine purchased from **ANTUNEZ** to agents. Your affiant notes the narcotics were contained in a plastic bag, believed to be the same bag **ANTUNEZ** was observed exiting **6157 Antioch Blvd., Baton Rouge, LA** with. Furthermore, agents searched the CS and the CS' vehicle for weapons, drugs, or money and reached negative results.

28. Based on the above detailed controlled purchase, in conjunction with surveillance, your affiant believes that **ANTUNEZ** utilizes **6157 Antioch Blvd., Baton Rouge, LA** to store and package cocaine and heroin for distribution.

29. As the investigation progressed, agents identified telephones used by **ANTUNEZ, PALMA** and **Juan VILLAREAL** to facilitate their narcotics trafficking.

30. Based on controlled purchases, physical surveillance, CS debriefings, and the analysis of telephone toll and pen register information, agents initiated court authorized Title III intercepts of the following telephones (hereinafter referred to as "**TARGET TELEPHONES**") used by **ANTUNEZ, PALMA,** and **VILLAREAL** to facilitate their drug trafficking:

i. 504-343-3919, a telephone used by **ANTUNEZ**, and hereinafter referred to as **TARGET TELEPHONE 1**. Interception of **TARGET TELEPHONE 1** began on October 16, 2018, and expired on December 1, 2018;

8

ii.     225-279-2174, a telephone used by **PALMA**, and hereinafter referred to as **TARGET TELEPHONE 2**.  Interception of **TARGET TELEPHONE 2** began on November 2, 2018, and is still active;

iii.    832-465-3768, a telephone used by **PALMA**, and hereinafter referred to as **TARGET TELEPHONE 3**.  Interception of **TARGET TELEPHONE 3** began on November, 2018, and is still active; and

iv.     832-537-7827, a telephone used by **VILLAREAL**, and hereinafter referred to as **TARGET TELEPHONE 4**.  Interception of **TARGET TELEPHONE 4** began on December 21, 2018, and is still active.

31.     Included in the Court Order authorizing the interception of wire and electronic communications occurring over the **TARGET TELEPHONES** is the release of E-911 Phase II Geo Location data from the service provider.  E-911 Phase II Geo Location data is the GPS location of the **TARGET TELEPHONES**.

32.     Based on intercepted communications over **TARGET TELEPHONE 1**, agents determined **ANTUNEZ** was obtaining cocaine and heroin from **PALMA**.  Furthermore, based on intercepted communications over **TARGET TELEPHONE 1** agents determined **ANTUNEZ** was distributing cocaine and/or heroin to a subject identified as **Nadeem BUTT**, and identified and unidentified subjects.

## V.     **PROBABLE CAUSE FOR SEARCH OF 6157 ANTIOCH BLVD., BATON ROUGE, LOUISIANA**

### A.     **Intercepted Communications between ANTUNEZ and Telephone Number 225-907-9157 arranging a drug transaction at 6157 Antioch Blvd., Baton Rouge, LA.**

33.     On October 19, 2018, at approximately 2:34 p.m., agents intercepted Session 280,

incoming call from telephone number 225-907-9157, utilized by a subject identified as **Nadeem BUTT ("BUTT")** over **TARGET TELEPHONE 1** to **ANTUNEZ**. Based on this intercepted communication, your affiant believes **ANTUNEZ** told **BUTT**, he could sell **BUTT** one half ounce of heroin for $1,100.

34. On October 20, 2018, at approximately 11:28 a.m., agents intercepted Session 419, an outgoing call from **ANTUNEZ** over **TARGET TELEPHONE 1** to telephone number 225-907-9157, utilized by a subject identified as **Nadeem BUTT**. During the telephone call, **ANTUNEZ** told **BUTT**, "Hey, when you come up that street, be careful that pussy ass police are out there pulling people over (**ANTUNEZ** is warning **BUTT** of law enforcement in the area- doesn't want **BUTT** to get stopped by police and have U.S. currency confiscated or seized), you heard me?"

35. Later during the telephone call, the following conversation took place:

> **ANTUNEZ**: "I'm on (**ANTUNEZ** residence is located) Antioch (**6157 Antioch Blvd., Baton Rouge, LA**)."

> **BUTT**: "Oh, okay."

> **ANTUNEZ**: "I'm the third hou...(**6157 Antioch Blvd., Baton Rouge, LA** is the third residence to the South of Shenandoah Elementary School) I'm the third... Uhm. My address. I don't like texting it sixty one fifty seven (**6157 Antioch Blvd., Baton Rouge, LA**)."

> **BUTT**: "Yeah, that's cool."

> **ANTUNEZ**: "Sixty one fifty seven (**6157 Antioch Blvd., Baton Rouge, LA**)."

> **BUTT**: "I got it."

> **ANTUNEZ**: "Antioch (**6157 Antioch Blvd., Baton Rouge, LA**)"

> **BUTT**: "I'll call you when I get on Antioch. Just stay out there. I'll be out there in a second."

ANTUNEZ: "Alright sixty one fifty seven Antioch (**6157 Antioch Blvd.**).

36.    On October 20, 2018, at approximately 11:35 a.m., agents intercepted Session 420, an incoming call from telephone number (225) 907-9157, utilized by a subject identified as **Nadeem BUTT**, over **TARGET TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **ANTUNEZ** states "No, sixty one fifty seven (**6157 Antioch Blvd., Baton Rouge, LA**)." Later during the conversation, **ANTUNEZ** states, "I'm, I'm like, I'm like the third house on the left. If you passed the school up..." (**6157 Antioch Blvd., Baton Rouge, LA** is the third residence to the South of Shenandoah Elementary School) and "It's the...it's the third...the big house, the big white house." Later during the conversation, **ANTUNEZ** states, "I'm walking to the corner right now."

37.    Based on all the above mentioned intercepted communications, your affiant believes **ANTUNEZ** exited **6157 Antioch Blvd., Baton Rouge, LA**, with one half ounce of heroin, walked to the corner and conducted a narcotics transaction with **BUTT**.  Furthermore, your affiant believes **BUTT** gave **ANTUNEZ** U.S. currency.  Subsequent to the narcotics transaction, your affiant believes **ANTUNEZ** returned to **6157 Antioch Blvd., Baton Rouge, LA**, with the U.S. currency.

38.    Based on the above intercepted communications, your affiant believes that **ANTUNEZ** utilizes **6157 Antioch Blvd., Baton Rouge, LA** to store, package, and distribute heroin, as well as store U.S. currency derived from illicit narcotics sales and distribution at **6157 Antioch Blvd., Baton Rouge, LA**.

### B.    Intercepted Communications between ANTUNEZ and a customer on October 26, 2018 referencing 6157 Antioch Blvd., Baton Rouge, LA.

39.    On October 26, 2018, at approximately 12:29 p.m., agents intercepted Session

1214, an outgoing call over **TARGET TELEPHONE 1** from **ANTUNEZ** to telephone number (985) 974-7850, utilized by an unknown male ("**U/M**"). During the telephone call, the **U/M** tells **ANTUNEZ** he wants to purchase 3.5 grams of cocaine.

40.     Later during the intercepted communication, the following conversation took place:

> **ANTUNEZ**: "Alright. Y'all got a scale (digital scale to weigh narcotics)?"
>
> **U/M**: "Huh? No, I ain't got one (digital scale to weigh narcotics), dude."
>
> **ANTUNEZ**: "Okay, I'm, I'm a have to run (go) to the house (**6157 Antioch Blvd., Baton Rouge, LA**) right quick.

41.     Based on the above intercepted communication, your affiant believes **ANTUNEZ** agrees to sell **U/M** a quantity of cocaine. Your affiant further believes **ANTUNEZ** tells **U/M** he has to go to **6157 Antioch Blvd., Baton Rouge, LA** to retrieve a digital scale, to weigh the narcotics before conducting the transaction.

42.     Based on the above intercepted communication, your affiant believes that **6157 Antioch Blvd., Baton Rouge, Louisiana** contains tools used in the distribution of cocaine, such as a digital scale.

**C. Intercepted Communications between ANTUNEZ and PALMA on November 26, 2018 wherein ANTUNEZ tells PALMA his drug proceeds are located at 6157 Antioch Blvd., Baton Rouge, LA.**

43.     On November 26, 2018, at approximately 1:31 p.m., agents intercepted Session 5856, an incoming call from **TARGET TELEPHONE 3 (PALMA)**, over **TARGET TELEPHONE 1** to **ANTUNEZ.**

44.     During the telephone call **ANTUNEZ** tells **PALMA**, "See look, what I was about to tell. I don't got the cash (U.S. currency) over here (**7200 Cypress Lakes Apt. Blvd.,**

Apartment 725, Baton Rouge, LA) I gotta go pick it (U.S. currency) up at my house (**6157 Antioch Blvd., Baton Rouge, LA**)."  Later during this conversation **PALMA** tells **ANTUNEZ**, "Well, I'm already here (**7200 Cypress Lakes Apt. Blvd., Baton Rouge, LA**)" to meet with **ANTUNEZ**.

45.    At approximately 1:32 p.m., agents observed **PALMA** arrive at **7200 Cypress Lakes Apt. Blvd., Baton Rouge, LA**, driving his 2010 Ford F-150, bearing Louisiana license Y220507.  At that time agents observed **PALMA** proceed towards **ANTUNEZ's** Toyota Tundra, bearing Louisiana license C405090, and apartment **725**.

46.    Based on this intercepted communication in conjunction with surveillance, your affiant believes **ANTUNEZ** is telling **PALMA**, he does not have any U.S. currency to pay **PALMA** for drug debt at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**. Furthermore, **ANTUNEZ** told **PALMA** he would have to go to **6157 Antioch Blvd., Baton Rouge, LA**, to retrieve U.S currency.

47.    Based on the above described intercepted conversation, in conjunction with surveillance, your affiant believes **ANTUNEZ** stores U.S. currency derived from the sales and distribution of cocaine and heroin at **6157 Antioch Blvd., Baton Rouge, LA**.

## VI.    PROBABLE CAUSE FOR SEARCH OF 7200 CYPRESS LAKES APT. BLVD., APARTMENT 725, BATON ROUGE, LA

48.    In the beginning of November 2018, investigators intercepted several communications which lead your affiant to believe **ANTUNEZ** was attempting to rent an apartment with **Brandon WILLIAMS** and **Emily MYERS**.  Furthermore, based on intercepted communications detailed below, your affiant believes **ANTUNEZ**, **MYERS** and **WILLIAMS** began renting **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**, on or

13

around the middle of November 2018.

A. **Intercepted Communications between ANTUNEZ, WILLIAMS, and MYERS setting up stash house at 7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA.**

49.    On November 7, 2018, at approximately 9:55 p.m., agents intercepted Session 2954, an incoming call from telephone number (337) 321-1493, utilized by **Brandon WILLIAMS**, over **TARGET TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **ANTUNEZ** and **WILLIAMS** discuss completing the application fee and security deposit for the apartment **ANTUNEZ, WILLIAMS** and **Emily MYERS** are trying to rent at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.  During the telephone call **ANTUNEZ** stated, "Cause you know 'cause sometimes, don't get me wrong, sometimes I'm a bring my shit (narcotics) over there (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**) and just leave it (narcotics) there (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**) you know?"

50.    On November 18, 2018, at approximately 4:56 p.m., agents intercepted Session 4844, an incoming call from telephone number (337) 321-1493, utilized by **Emily MYERS**, over **TARGET TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **ANTUNEZ** asks **MYERS**, "What the apartment number is?" with **MYERS** replying, "Seven twenty five (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)."

51.    On November 30, 2018, at approximately 3:36 p.m., agents intercepted Session 6821, an incoming call from telephone number (337) 321-1493, utilized by **Brandon WILLIAMS**, over **TARGET TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **WILLIAMS** asks **ANTUNEZ** what their apartment number was with **ANTUNEZ** replying, "Uh. Seven (7). Seven twenty-five (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton**

Rouge, LA) why? What's up?"

**B.      Intercepted Communications between  ANTUNEZ and PALMA on
November 25 and November 26, 2018 setting up drug transaction at 7200
Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA.**

52.      On November 25, 2018, beginning at approximately 12:27 a.m., agents

intercepted Sessions 5771, 5773 and 5779 over **TARGET TELEPHONE 1**. This series of text

messages was exchanged between **ANTUNEZ** and **TARGET TELEPHONE 3**, utilized by

**PALMA**.  During these sessions, **PALMA** texted **ANTUNEZ** agreed to conduct a 10 ounce

cocaine transaction on November 26, 2018.

53.      On November 26, 2018, at approximately 7:12 p.m., agents intercepted Session

5880, an incoming call from **TARGET TELEPHONE 3**, utilized by **PALMA**, over **TARGET

TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **PALMA** and **ANTUNEZ** discuss

where to meet to conduct the narcotics transaction.  During the conversation **ANTUNEZ** asks

**PALMA**, "Where my apartment (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton

Rouge, LA**)?" with **PALMA** replying, "Yeah right there at your spot (**7200 Cypress Lakes Apt.

Blvd., Apartment 725, Baton Rouge, LA**)."

54.      On November 26, 2018, at approximately 7:21 p.m., agents intercepted Session

5884, an incoming call from **TARGET TELEPHONE 3**, utilized by **PALMA**, over **TARGET

TELEPHONE 1** to **ANTUNEZ**.  During the telephone call, **PALMA** told **ANTUNEZ**, "I'm

pulling up (arriving at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)."

55.      Your affiant reviewed E-911 data provided by AT&T indicating the location of

**TARGET TELEPHONE 1**.  An analysis of this data revealed that on November 26, 2018, at

approximately 7:18 p.m., **TARGET TELEPHONE 1** was located at **7200 Cypress Lakes Apt.

Blvd., Baton Rouge, LA**.  Based on this analysis and the above information, your affiant

15

believes **ANTUNEZ** was at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

56.     Your affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**. An analysis of this data revealed that on November 26, 2018, at approximately 7:32 p.m., **TARGET TELEPHONE 3** was located at **7200 Cypress Lakes Apt. Blvd., Baton Rouge, LA**. Based on this analysis and the above information, your affiant believes **PALMA** was at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

57.     Based on the above-described intercepted communications, in conjunction with E-911 telephone location data your affiant believes **ANTUNEZ** and **PALMA** conducted a narcotics transaction for 10 (ten) ounces of cocaine while at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

58.     Based on the above-described intercepted communications, in conjunction with E-911 telephone location data, your affiant believes **ANTUNEZ** accepts delivery of cocaine at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

**C.**     **Surveillance of Richard ANTUNEZ on November 27, 2018.**

59.     On November 26, 2018, at approximately 11:30 p.m., agents intercepted Sessions 5943 and 5944, a series of text messages exchanged between **TARGET TELEPHONE 1 (ANTUNEZ)** and telephone number 225-717-1664, utilized by **Unknown Male (U/M)**. Based on these intercepted text messages, your affiant believes **ANTUNEZ** and **U/M** would conduct a narcotics transaction for an ounce of narcotics on November 27, 2018. Furthermore, your affiant believes **ANTUNEZ** asked the **U/M** to pay an unknown of amount of U.S. currency towards the narcotics.

60.     At approximately 7:27 p.m., agents observed **ANTUNEZ's** 2016 Toyota Tundra, bearing Louisiana license C405090, arrive at Cypress Lakes Apartment complex, located at **7200 Cypress Lakes Apartment Boulevard, Baton Rouge, LA**.  At that time agents observed **ANTUNEZ** park and exit his vehicle and begin walking towards **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

61.     Beginning at approximately 7:50 p.m., agents intercepted Sessions 6069 and 6070, text messages exchanged between **TARGET TELEPHONE 1(ANTUNEZ)** and telephone number 225-717-1664, utilized by **Unknown Male (U/M)**.  During this series of text messages **U/M** asks **ANTUNEZ**, where would they meet for the narcotics transaction, with **ANTUNEZ** replying, "Hooters on siegen."

62.     At approximately 8:13 p.m., agents observed **ANTUNEZ** walk from the direction of **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**, to his Toyota Tundra truck and enter the drivers' seat. At that time, agents observed **ANTUNEZ** depart **7200 Cypress Lakes Apt. Blvd., Baton Rouge, LA.**

63.     At that time, agents conducted continuous surveillance on **ANTUNEZ** and the Toyota Tundra and observed the vehicle travel directly to the Hooters restaurant, located at 6454 Siegen Lane, Baton Rouge, LA, at approximately 8:18 p.m., making no other stops.

64.     Upon arrival at the Hooters parking lot, agents observed **ANTUNEZ** back his truck into a parking spot next to a Ford Expedition, bearing Louisiana license VBC671, with **ANTUNEZ's** passenger door next to the passenger door of the Ford Expedition.  A records check revealed the Ford Expedition is registered to Houston Williams at 4455 Jenkins Road, Darrow, Louisiana.

65.     At approximately 8:19 p.m., agents observed a black male exit the driver's door of the Ford Expedition, walk behind his vehicle, and enter the front passenger seat of **ANTUNEZ's** truck.

66.     At approximately 8:22 p.m., agents observed the black male exit **ANTUNEZ's** truck and return to the driver's seat of the Ford Expedition.  At that time, both vehicles departed the parking lot.

67.     Your affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 1**.  An analysis of this data revealed that on November 27, 2018, at approximately 7:50 p.m., **TARGET TELEPHONE 1** was located at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.  Based on this analysis and the above information, your affiant believes **ANTUNEZ** was at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

68.     Based on the above-described intercepted communications, in conjunction with surveillance and E-911 telephone location data your affiant believes **ANTUNEZ** stores and packages narcotics for distribution at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

**D.     Surveillance of Richard ANTUNEZ engaging in drug transaction at 7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA on November 28, 2018.**

69.     On November 28, 2018, beginning at approximately 1:25 p.m., agents intercepted Sessions 6412, 6415, 6416, 6418, and 6419, a series of text messages exchanged between **TARGET TELEPHONE 1 (ANTUNEZ)** and telephone number 832-269-9885, utilized by **Unknown Male (U/M)**. Based on this series of intercepted text messages, your affiant believes **ANTUNEZ** agrees to sell the **U/M** seven (7) grams of cocaine for two hundred and seventy five

dollars ($275).

70.    At approximately 4:02 p.m., agents intercepted Sessions 6460 and 6461 over **TARGET TELEPHONE 1**.  These sessions were outgoing text messages from **ANTUNEZ** to 832-269-9885 utilized by **U/M**.  During these sessions **ANTUNEZ** texted **U/M**, "Cypress lakes apt (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)" and "7200 cypress lake apt blvd (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)".

71.    At approximately 4:04 p.m., agents intercepted session 6463, an outgoing call from **ANTUNEZ** over **Target Telephone 1** to telephone number 832-269-9885, utilized by **U/M**.  During the telephone call **ANTUNEZ** told **U/M**, "Come down that service road (Rieger Road) all the way around to the back and they got some apartments called Cypress Lake Apartments (**7200 Cypress Lakes Apt. Blvd, Apartment 725, Baton Rouge, LA**)."

72.    At approximately 4:04 p.m., agents intercepted session 6464, an outgoing text message from **ANTUNEZ** over **TARGET TELEPHONE 1** to telephone number 832-269-9885, utilized by **U/M**.  **ANTUNEZ** texted **U/M**, "7200 Cypress Lake Dr Baton Rouge, LA 70809 United States (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)."

73.    At approximately 4:05 p.m., agents located **ANTUNEZ's** 2016 Toyota Tundra, bearing Louisiana license C405090, at Cypress Lake Apartments, located at **7200 Cypress Lakes Apt. Blvd., Baton Rouge, LA**, and established surveillance.

74.    At approximately 4:07 p.m., agents intercepted session 6467, an outgoing telephone call from **ANTUNEZ** over **TARGET TELEPHONE 1** to telephone number 707-486-7163, utilized by **TJ**.  During the telephone conversations, **ANTUNEZ** tells **TJ**, "Cypress Lake Apartments (**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)."

75.     At approximately 4:07 p.m., agents intercepted session 6468, an incoming call

from 832-269-9885, utilized by **U/M** over **TARGET TELEPHONE 1** to **ANTUNEZ**. During

the telephone conversation **ANTUNEZ** told **U/M**, "Yeah, I'm 'bout to come outside (exit **7200**

**Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**)."

76.     At approximately 4:08 p.m., agents intercepted session 6470, an incoming call

from 707-486-7163, utilized by **TJ** over **TARGET TELEPHONE 1** to **ANTUNEZ**.  Based on

this intercepted telephone communication, your affiant believes **TJ** wants to purchase one half

ounce of cocaine.

77.     At approximately 4:11 p.m., agents observed **ANTUNEZ** exit the front door of

**7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**, holding a paper bag in his

left hand, and proceed in a Northern direction through the breezeway towards the rear of the

apartment complex.

78.     At approximately 4:15 p.m., agents observed a tan colored Nissan Altima and

gold colored small suv, possibly an Infiniti, proceed South through the parking lot from the rear

of the complex and stop near **ANTUNEZ's** truck.

79.     At that time, agents observed **ANTUNEZ** exit the front passenger seat of the tan

colored Nissan and walk directly back to and enter **7200 Cypress Lakes Apt. Blvd., Apartment**

**725, Baton Rouge, LA**.  At the time, both vehicles departed the apartment complex.

80.     Based on the above mentioned intercepted communications in conjunction with

surveillance, your affiant believes **ANTUNEZ** exited **7200 Cypress Lakes Apt. Blvd.,**

**Apartment 725, Baton Rouge, LA**, walked to the parking lot and conducted a narcotics

transaction with the **Unknown Male** and the subject identified as **TJ**.  Furthermore, your affiant

believes during these narcotics transaction **ANTUNEZ** distributed the **U/M** seven grams of

cocaine and distributed one half ounce of cocaine to **TJ**.

81.     Based on the above-described intercepted communications, in conjunction with surveillance, your affiant believes **ANTUNEZ** stores, packages, and distributes cocaine at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA.**

**VII.    ANTUNEZ CONTINUES TO DISTRIBUTE COCAINE AND HEROIN AND UTILIZE RESIDENCES LOCATED AT 6157 ANTIOCH BLVD., BATON ROUGE, LA AND 7200 CYPRESS LAKES APT. BLVD., APARTMENT 725, BATON ROUGE, LA**

**A.    Intercepted Communications between ANTUNEZ and PALMA arranging heroin sale on December 27, 2018.**

82.     On December 27, 2018, at approximately 11:21 a.m., agents intercepted session 1369, an incoming text message from **TARGET TELEPHONE 1 (ANTUNEZ)** over **TARGET TELEPHONE 3** to **PALMA**.  **ANTUNEZ** texted **PALMA**, "And I need a 1 ft (one ounce) of crown molding (heroin)."

83.     At approximately 1:46 p.m., agents intercepted session 1386, an incoming call from **TARGET TELEPHONE 1**, utilized by **ANTUNEZ** over **TARGET TELEPHONE 3** to **PALMA**.  During this conversation **ANTUNEZ** and **PALMA** agree to meet at Five Guys Restaurant to conduct the narcotics transaction.

**B.    Intercepted Communication between ANTUNEZ and PALMA on December 28, 2018.**

84.     On December 28, 2018, approximately 7:14 p.m., agents intercepted session 1399, an outgoing call from **PALMA** over **TARGET TELEPHONE 3** to **TARGET TELEPHONE 1**, utilized by **ANTUNEZ**.  During the telephone call the following conversation took place:

**ANTUNEZ**: "You missed one (narcotics transaction).  Fuck."

**PALMA**: "What?"

**ANTUNEZ**: "Uh, my homeowner (customer), my homeowner (customer) wanted, wanted something (narcotics). He just left for Florida."

**PALMA**: "Oh, yeah?  What they want?"

**ANTUNEZ**: "Man, that nigga was trying to buy nine (nine ounces of narcotics)."

**PALMA**: "A nine (nine ounces of narcotics)?"

**ANTUNEZ**: "Yeah."

**PALMA**: "A nine (nine ounces) of what (which narcotics)?"

**ANTUNEZ**: "What you think?"

**PALMA**: "Of the primer (cocaine)?"

**ANTUNEZ**: "Nope."

**PALMA**: "Oh, of the trim (heroin)?"

**ANTUNEZ**: Yeah.

85.     Based on the above-described intercepted communications, your affiant believes **ANTUNEZ** still is currently involved in narcotics trafficking activities.

86.     Investigation to date reveals that **ANTUNEZ** is presently distributing cocaine and heroin.  Based on the investigation to date, your affiant believes that **ANTUNEZ** is continuing to use the residence **6157 Antioch Blvd., Baton Rouge, LA** and the residence located at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA** to facilitate his cocaine and heroin trafficking.  Surveillance on January 3, 2019 located **ANTUNEZ's** vehicle, a green Toyota Tundra, bearing Louisiana license C405090, at the residence on **6157 Antioch Blvd., Baton Rouge, LA**.  Surveillance on January 6, 2019 located **ANTUNEZ's** vehicle, a green Toyota Tundra, bearing Louisiana license C405090, located at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**.

## VIII.  <u>CONCLUSION</u>

87.     Based on the facts set forth in this affidavit, as well as my training and experience, your affiant believes that **ANTUNEZ** and others have violated Title 21, United States Code, Sections 841(a)(1) and are utilizing the residence located at **6157 Antioch Blvd., Baton Rouge, LA** and the residence located at **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA** to facilitate their cocaine and heroin trafficking activities.

88.     Based on the above detailed intercepted telephone communications, in conjunction with the controlled purchase, physical surveillance, and cellular telephone location data, your affiant believes that **ANTUNEZ** utilizes **6157 Antioch Blvd., Baton Rouge, LA** to store, package, and distribute heroin and cocaine, and store the illegal proceeds derived from the sales of cocaine and heroin.  Your affiant believes evidence of these narcotics trafficking activities are contained within **6157 Antioch Blvd., Baton Rouge, LA**.

89.     Based on the above detailed intercepted communications, in conjunction with physical surveillance, and cellular telephone location data your affiant believes that **ANTUNEZ** utilizes **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, LA**, to store, package, and distribute heroin and cocaine, and store the illegal proceeds derived from the sales of cocaine and heroin.  Your affiant believes evidence of these narcotics trafficking activities are contained within **7200 Cypress Lakes Apt. Blvd., Apartment 725, Baton Rouge, Louisiana**.

90.     Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances.  It is also common for large-scale narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or business for their ready

access and control and to conceal them from law enforcement. Narcotics traffickers in large-scale trafficking organizations also conceal, in their residences and/or place of business, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities.

91.    Your affiant knows, through training and experience, that locations used by drug traffickers to store cocaine and heroin, distribute cocaine and heroin, accept delivery of cocaine and heroin, and package cocaine and heroin for distribution, often times contain tools used for these purposes and contain evidence of narcotics trafficking. These items include, but are not limited to, cocaine, heroin, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, firearms, U.S. currency, and ledgers or logs containing records of past, present, or future drug transactions. Further, your affiant knows, through training and experience, heroin and cocaine traffickers keep firearms in their residences to protect the heroin, cocaine, and/or money derived from the sale of narcotics.

92.    Your affiant knows, through training and experience, narcotics traffickers often keep money derived from the sale of controlled substances in their residence, business or the residence of a trusted family member. Furthermore your affiant knows, through training and experience, that locations used by narcotics traffickers to count, store, and package money derived from the sale of controlled substances often contain tools used for this purpose. These tools include, but are not limited to, U.S. currency, rubber bands, money counters, plastic wrap, digital calculators and written ledgers documenting dates and amounts of currency transferred and to whom the transfer occurred.

93.     It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against potential flight, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

94.     Based on the aforementioned information, I request the authority to search the above described addresses.


_____
Jason A. Dohm, Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed in my presence this ___7th___ day of January, 2019, at Baton Rouge, Louisiana.


_____
HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

**ATTACHMENT A**

**Property to be Searched**

The property to be searched and 7200 Cypress Lakes Apt. Blvd., Apartment #725, Baton Rouge, Louisiana 70809, to include any outbuildings, storage sheds and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as multi-story, multi-family apartment complex.  The residence is constructed of brick and brown/beige siding.  The numbers "725" are displayed on the front door of the residence.  The building the residence is located in has a placard on it that says "7" and another placard that says the apartment numbers located within the building, with 725 being listed.  Photographs of the property are included below.











**ATTACHMENT B**

**Particular Things to be Seized**

Items to be searched for and seized as fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, are the following:

1.  United States currency, rubber bands, money counters, plastic wrap, digital calculators and financial instruments.

2.  Books, records, notes, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances along with evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities going back for a period of 5 years.

3.  Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances going back for a period of 5 years.

4.  Cocaine, heroin, and other narcotics, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, and firearms used in the distribution of narcotics.

5.  Written ledgers documenting dates and amounts of currency transferred and to whom the transfer occurred and ledgers or logs containing records of past, present, or future drug transactions going back for a period of 5 years.



AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE PREMISES LOCATED AT<br>7200 CYPRESS LAKES APT. BLVD., APARTMENT 725<br>BATON ROUGE, LOUISIANA 70809 | )<br>)<br>)<br>)  Case No.  19-mj-6<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

        See Attachment "A"


        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

        See Attachment "B"


        **YOU ARE COMMANDED** to execute this warrant on or before _January 18, 2019_ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____ .
                                                                                    *(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
        ☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:    _1/7/19, 7:20 p.m._                    _Erin Wilder-Doomes_
                                                                            *Judge's signature*

City and state:    _____Baton Rouge, Louisiana_____    _____Erin Wilder-Doomes, U.S. Magistrate Judge_____
                                                                            *Printed name and title*

## ATTACHMENT A

### Property to be Searched

The property to be searched and 7200 Cypress Lakes Apt. Blvd., Apartment #725, Baton Rouge, Louisiana 70809, to include any outbuildings, storage sheds and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as multi-story, multi-family apartment complex. The residence is constructed of brick and brown/beige siding. The numbers "725" are displayed on the front door of the residence. The building the residence is located in has a placard on it that says "7" and another placard that says the apartment numbers located within the building, with 725 being listed. Photographs of the property are included below.











## ATTACHMENT B

### Particular Things to be Seized

Items to be searched for and seized as fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, are the following:

1.  United States currency, rubber bands, money counters, plastic wrap, digital calculators and financial instruments.

2.  Books, records, notes, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances along with evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities going back for a period of 5 years.

3.  Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances going back for a period of 5 years.

4.  Cocaine, heroin, and other narcotics, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, rubber gloves, and firearms used in the distribution of narcotics.

5.  Written ledgers documenting dates and amounts of currency transferred and to whom the transfer occurred and ledgers or logs containing records of past, present, or future drug transactions going back for a period of 5 years.